No. 2124.

M. M. RICHARDSON ET AL. *v.* G. A. LEVI ET AL.

1. ASSIGNMENTS OF ERROR.—A general assignment of errors that "the court erred in each and every finding of fact, from fourth to tenth, inclusive, because said findings are not just and fair deductions or conclusions from any evidence in the case," suggests no specific error under any rule of practice.

2. INNOCENT PURCHASER—QUIT CLAIM DEED.—Rodgers v. Burchard, 34 Texas, 442, reviewed, and, *held*, that the doctrine there announced with regard to bona fide purchasers must be limited to the precise character of case then presented, and as extending no further than to establish that a deed which purports to convey only the right, title and interst of the grantor will not protect the grantee against prior unregistered instruments.

Syllabus.

3. SAME.—Harrison v. Boring, 44 Texas, 256, reviewed, and the conclusion announced that one who has purchased the absolute right to land, in contradistinction to that of the title or claim of title of the grantor, and who, by evidence aside from the recitals of his deed, shows that he has paid a valuable consideration therefor, may claim as an innocent purchaser against any adverse title, or equities of which he had no notice. The doctrine that a grantee under a quit claim deed is not to be treated as an innocent purchaser, applies only to quit claim deeds in the strict sense of that species of conveyances, or, in other words, such deeds as purport to convey and quit claim to the purchaser no more than the right, title or interest of the grantor.

4. CLAUSE OF WARRANTY.—When the instrument in which a clause of warranty is contained purports to make a full and perfect conveyance of land described in it, this clause does not strengthen or enlarge the title conveyed, but only evidences a separate contract, by which the grantor agrees to pay damages if the title fails.

5. GRANT—DEED.—If a grantor conveys no more than his title, the presumption is that he had doubts as to his right to the land, and notice of some opposing claim, and he thus suggests that doubt on the face of his deed. If he conveys the land without restriction as to title, it will be presumed that he had and intended to convey as full a title as could be held in the land, and that he had no doubt of his right to do so.

6. SAME.—In such case the purchaser has notice, from an inspection of his deed, that he is getting such title as the grantor purports to convey—in the one case a doubtful title, and he is put upon inquiry as to the claim which casts the doubt upon it,—in the other a full title, and he need make no inquiry on the subject.

7. CONSTRUCTION OF WORDS.—See the opinion in this case for the signification and legal effect at common law of the words used in a deed to convey title.

8. SAME.—In America the words " grant, bargain and sell" may convey full fee simple title to any species of property. A release may be used to convey a title to one who has no previous right in the land, and is, in most States, equivalent to the words " *quit claim.*"

9. CONSTRUCTION OF DEED.—The granting clause in a deed was as follows: " For the sum of two hundred dollars, received to my full satisfaction of John C. Moody, of Victoria county, in the State of Texas, do by these presents grant, bargain, sell, demise, release, and forever quit claim unto the said Moody, his heirs and assigns, the following lot of land, situate," etc. *Held:*

(1) That the use of the word "*quit claim*" in the deed did not make it any the less a conveyance of the lot described, or restrict it so as to make it upon its face convey no more than the interest of the grantor in the property.

(2) One holding under such a deed, having paid the purchase money, may be a bona fide purchaser, and, as such, protected against a prior unregistered deed, of which he had no notice.

APPEAL from Victoria. Tried below before the Hon. H. Clay Pleasants.

*A. B. Peticolas,* for appellants :   That Mrs. Richardson's title is not within the registration laws and good to entitle her to recover:  McKamey v. Thorp, 61 Texas, 648;  Parker v. Coop, 60 Texas, 112;  Battle v. John, 49 Texas, 207;  Blankenship v. Douglas; 26 Texas, 225;  Bonner v. Stephens, 60 Texas, 616.

That parties are bound by the recitals in their chain of title: Kimbro v. Hamilton, 28 Texas, 561, 568;  Hardy v. DeLéon, 5 Texas, 211, 244;  Box v. Lawrence, 14 Texas, 540, 556.

As to quit claim deed being notice of defects in title, and sufficient to put purchaser upon inquiry, and insufficient to support plea of bona fide purchaser:   Rodgers v. Burchard, 34 Texas, 452, 453;  Harrison v. Boring, 44 Texas, 256, 260;  Taylor v. Harrison, 47 Texas, 460, 461;  Mast v. Tibbles, 60 Texas, 301;  Milam County v. Bateman, 54 Texas, 155;  Hamman v. Keigwin, 39 Texas, 41; Carter v. Wise, 39 Texas, 274, 275.

There is no equitable estoppel: Fitzgerald v. Turner, 43 Texas, 79;  Johnson v. Bryan, 62 Texas, 623;  Thomas v. Williams, 50 Texas, 270–275.

*Scott & Levi,* for appellee Levi, cited 9 Texas, 129; 10 Texas, 246; 30 Texas, 591; 19 Texas, 480; 53 Texas, 632; 27 Texas, 350; Glasscock v. Nelson, 26 Texas, 150; 63 Texas, 213; McFaddin v. Williams, 58 Texas, 625; 2 Story's Equity Jurisprudence, section 529; 7 Waite's Actions and Defenses, 229; 1 Pomeroy's Equity Jurisprudence, section 418; 2 Pomeroy's Equity Jurisprudence, section 780; Bassett v. Nosworthy, part 1, volume 2; White & Tudor's Leading Cases in Equity, 27, 28, 29, 60.

*Stockdale & Proctor,* also for appellees, cited Parker v. Coop, 60 Texas, 112.

WILLIE CHIEF JUSTICE.   This was an action of trespass to try title to a block of ground in the town of Victoria.   It was brought by Mary M. Richardson and her husband, John W. Richardson, against the appellees G. A. Levi, A. Lowe and Marion Wheeler, each of whom set up the following defenses, viz., not guilty; limitation of three, five and ten years; innocent purchaser for value, without notice of any adverse claim to the land; equitable estoppel and laches; and stale demand.   Levi and Lowe pleaded also improvements in good faith, with prayer for judgment for their value.   The case was tried by the judge without a jury, who found against the defendants upon all their

---

---

defenses except that of laches and stale demand. He found, however, in favor of Levi and Lowe upon their suggestion of improvements in good faith.

The plaintiffs and defendants all deraigned title from Robert H. Bradley. He had exchanged the block in controversy together with other property in Texas, for some property in Tennessee, which is claimed in this suit to have been the separate property of Mrs. M. M. Richardson. Deeds were passed between the parties, but it was not shown whether the deed from Bradley for the Victoria property was made to Mrs. Richardson or to her husband. It was never recorded, and so far as the record shows neither Richardson nor his wife set up any claim to this block for perhaps thirty years after the deed was executed. Some eighteen months after the date of the deed James Park obtained judgment against John W. Richardson, and an execution issued thereon which was levied upon this block, and at execution sale it was bought in by Park, who credited the purchase money upon the execution and received from the sheriff a deed for the property. Some four years afterwards Park sold the block to John C. Moody for two hundred dollars, and executed to him a deed of which the following is a copy :

"Know all men, that I, James Park, of Williamson county, State of Tennessee, for the sum of two hundred dollars received to my full satisfaction, of John C. Moody, of Victoria county, in the State of Texas, do by these presents grant, bargain, sell demise, release and forever quit claim unto the said Moody, his heirs and assigns, the following lots of land, situated and being in the town of Victoria, county of Victoria, and State of Texas, and known upon the map and according to the plan of said town as building lots numbers one, two, three and four, in block one hundred and thirty-one and range nine.

          "Witness my hand and scroll for seal, this twenty-
[SEAL]          first day of July, 1858.
               "(Signed)                    JAMES PARK."

Moody conveyed by quit clain deed November 4, 1858, to I. O. Wheeler for the consideration of five hundred dollars. Marion Wheeler, one of the defendants, inherited one-third of one of the lots in the block, from I. O. Wheeler, and the remainder of the block passed by mesne conveyances, all of which were war-

ranty deeds to the several defendants in this cause. Among other conclusions of fact found by the judge was the following:

"That all of the purchasers of the premises since the sale under the execution in 1854, purchased without notice of any claim or right of Mrs. Richardson, and that they each and all paid value for the parcels of land by them respectively bought."

This conclusion is not questioned here by any proper assignment of error. It is true that there is an assignment that the court erred in each and every finding of fact from fourth to tenth inclusive, because said findings are not just and fair deductions or conclusions from the evidence in the case to be found in the record. The above recited conclusion of fact is the ninth, and would therefore be embraced in the assignment; but this general manner of assigning errors has been often held by this court to be insufficient. It does not bring to our attention the particular finding of the court claimed to be unwarranted by the evidence. Moreover, the appellants virtually abandoned any objection to the ninth conclusion of fact by specifying in their brief the particular points upon which they take issue with the court below as to its finding of fact, omitting the point embraced in the foregoing conclusion.

As one of his conclusions of law from the foregoing facts, the learned judge below held that as all of the defendants deraigned title through a quit claim deed executed by the purchaser under execution sale, who himself had paid the money by crediting it upon his execution, not one of them could be considered an innocent purchaser. This conclusion presents the question to which we propose to direct our attention.

It may now be regarded as the settled law of this State that a party receiving a quit claim deed to land can not be deemed a bona fide purchaser without notice of any greater interest therein than his grantor had at the date of the execution of the deed. This doctrine was first authoritatively announced in Rodgers v. Burchard, 34 Texas, 442, and has been adhered to ever since as to all deeds of quit claim in the strict sense of that term. In the case cited, the deed conveyed "all the right, title and interest" of the grantor; and in all the authorities relied on to sustain the decision, deeds under consideration made use of similar language. The extent of the decision of Rodgers v. Burchard, therefore, is that a deed which purports to convey only the right, title and interest of the grantor, will not protect the grantor against prior unregistered instruments. The question as to the

rights of purchasers under quit claim deeds, has since been before this court on several occasions, and the decision in Rodgers v. Burchard has been limited to the precise case then before the court, and has been held to have gone no further than to establish the principle as above formulated. (Harrison v. Boring, 44 Texas, 255; Taylor v. Harrison, 47 Texas, 460.)

In Harrison v. Boring, Chief Justice Roberts, in delivering the opinion of the court, noted the distinction between a deed which purports to convey the right, title and interest of the grantor in land, and one which purports to convey the land itself. He distinctly recognized the principle announced in Van Rensselaer v. Kearney, 11 Howard, 322, that when the deed contains evidence that the absolute right to the land, and not the title or chance of title, is sought to be sold or bought, the grantor may be a bona fide purchaser, notwithstanding the deed may have in some respects the qualities of a quit claim deed in form. The opinion in Harrison v. Boring warrants the conclusion that one who has in good faith purchased the absolute right to land in contradistinction to that of the title or claim of title of the grantor, and by outside proof has shown that he paid a valuable consideration therefor, may claim as an innocent purchaser, against any adverse title or equities of which he had no notice.

This was the construction placed upon the decision by Judge Moore in Taylor v. Harrison, supra; and this court, in that case, approved the decision in Rodgers v. Burchard in so far only as it was qualified by the opinion in Harrison v. Boring. Judge Moore said, in effect, that the doctrine that a grantee under a quit claim deed is not to be treated as a bone fide purchaser applies only to quit claim deeds in the strict sense of that species of conveyance, i. e., when the instrument purports and is intended to convey only the right, title and interest in the property named in it; and as to the rights of purchasers in this respect, he drew a distinction between such deeds and those purporting to convey an absolute title to land without covenants of warranty.

The clear deduction from these cases is, that in order to charge a purchaser with notice of an unrecorded instrument, a secret lien or equity, by reason of the character of deed under which he claims, that deed must purport to convey and quit claim to the purchaser no more than the right, title or interest of the grantor. Upon an examination of the decisions of other States where a quit claim purchaser is subject to the same rule, we find,

so far as the cases afford us information, that the decisions were upon deeds purporting to convey only the title or interest of the grantor.  (40 Iowa, 489; 18 Minn., 408; 21 Ala., 124; 59 Mo., 455.)

In the case of Hope v. Stone, 10 Minn., 141, the court, in holding that the deed before them, which conveyed only the right, title and interest of the grantor, did not protect the grantee against a previous trust with which the land conveyed was charged, said if it had been a conveyance of the land, instead of the right, title and interest of the grantor, it might be necessary to inquire whether the registration or possession of the opposing claimant was notice to the grantee.  But, they say, as he took only his grantor's right, he took nothing which the latter had previously conveyed; the very terms of the deed were notice to him of all rights previously conferred upon others by his grantor.

This view seems to accord with that intimated in the decisions of our own court, to which we have referred, and they can doubtless be rested upon the principles announced in the Minnesota case, viz., in a strictly quit claim deed the grantee takes no more than the grantor can lawfully convey, and the fact that the deed purports to do no more gives notice of the prior right of third parties.

Strictly speaking, no deed can of itself convey a greater estate than the grantor owns at the time of making it, whether it be a quit claim of interest or a deed to the land with or without covenants of warranty.  If the title of the grantee is better than that held by his vendor, it is because the owner of an outstanding claim can not assert it against the purchaser, though he might have done so against his grantor.  The latter receives the title of the grantor, accompanied with a right which the former did not possess, viz., to defend against secret outside titles of which the grantor was charged with notice, but of which the grantee is in fact ignorant.  This is the effect of a deed which purports to convey the property, and not the right of the maker of the instrument.  On its face it possesses an indefeasible title, and gives no notice that there may be some secret claim which may defeat it.  The law makes it what it purports to be, a conveyance of a good title to the land, so far as such secret claims are concerned, by forbidding their owners to assert such claims against the purchaser, and, as said in Taylor v. Harrison, whether the deed has or has not a clause of warranty.  This clause forms no part of the conveyance.

When the instrument in which it is contained purports to make a full and perfect conveyance of the land described in it, this clause does not strengthen or enlarge the title conveyed. It is a separate contract to which the grantee agrees to pay damages if the title fails; but it does not make the title itself any better. If it accompanies a deed which conveys only the right and title of the grantor, it evidences a confidence of the grantor in his title to the land, and a want of like confidence on the part of the grantee in such title. But an unrestricted conveyance of the property for a fair consideration, shows that the purchaser supposes that he is getting the whole estate, though he takes no separate contract for a return of the purchase money in case he does not. Judge Story said in the case of Flagg v. Mann, 2 Sum., 562, that he was not aware that any covenant of general warranty had ever been held necessary to entitle the vendee to make the defense of innocent purchaser, when he bought the property and not the interest of the grantor. If he gives a full price for an unquestioned and unquestionable fee simple, the absence of covenants of general warranty ought not to take away from him the common protection. This affords proof that he had no suspicion of the title not being perfect, and he was "on equal equity with any person claiming under an outstanding and unknown trust; and, if so, the legal title combined with the equity ought not to be disturbed."

If a grantor conveys no more than his title, the presumption is that he had doubts as to his right to the land, and notices of some opposing claim; and he thus expresses that doubt upon the face of the deed. If he conveys the land without restriction as to title, the presumption is that he had and intended to convey as full a title as could be had in the land, and that he had no doubt of his right so to do. The purchaser in each case has notice that he is getting such title as his grant or purports to convey: in the one case, a doubtful title, and he is put upon inquiry as to the claim which casts the doubt upon it; in the other, a full title, and he need make no inquiry upon the subject.

The deed from Park to Moody does not purport on its face to convey merely the right and title of Park to the land, but the land itself. It is true that it uses the words *quit claim* in connection with other words by which title may be passed under a deed of conveyance; but we do not think this word restricts the conveyance in any manner whatever. The words used in the ordinary form of a quit claim at common law, are, "remise,

release and forever quit claim all the right, title and interest " of the party making the deed.   The use in addition of other words such as "give, grant, bargain and sell," would not change the character of the conveyance, if the interest sold was still described as the "right and title" of the grantor.   It would still be a conveyance of that interest and not of the land described in the deed.   But each of the words of conveyance found in deeds which purport to convey land, and not the vendor's title, had at common law its own signification and legal effect.   The word *give* was used in conveying a fee tail; the word *grant,* to convey an incorporeal hereditament; the terms *bargain* and *sell* evidenced a contract to convey, which made the bargainor to hold for the use of the bargainee; and the statute of uses vested the title in the usee.   A release was used only when the releasee was in possession and releasor conveyed to him his own title. The signification of these terms has been somewhat modified, and, in America at least, the words *grant,* or *bargain* and *sell,* may convey full fee simple title to any species of property.

A release may be used to convey a title to one who has no previous right in the land, and is in most States equivalent to the words *quit claim.*   It is customary in all, or the most of these terms in deeds intended to pass property by fee simple title, and the law in such cases is, that the party receiving the deed has his election in what way to take it.   (Hilliard on Real Property, 491, 492.)

If the words used are "grant, bargain and sell, release and confirm," he may take whatever estate either of these words would convey.   The mere fact that his right under one of the words would be of less value than under another, does not limit the deed to what the former would convey.   If one grants, bargains and releases, the grantee takes his title as well by grant, bargain and sale as by release.

It is clear therefore that the use of the words "quit claim " in the present deed did not make it any the less a conveyance of the lot in controversy, or restrict it so as to make it upon its face convey no more than the interest of the grantor in the property.

We think that the court having found that Moody bought without notice of Mrs. Richardson's claim, and paid value for the property, should have been adjudged a *bona fide* purchase without notice, under the deed received by him from Park, and that for this reason the judgment rendered by the court below in favor of the appellees was correct.   This relieves us from the

necessity of inquiries whether the subsequent vendees claiming through Moody, might not have been treated as *bona fide* purchasers, having taken warranty deeds, notwithstanding their line of title through are of a quit claim character. Nor need we inquire as to whether the ruling of the court was correct upon the question of laches and stale demand. For the reasons already assigned, the judgment is affirmed.

*Affirmed.*

Opinion delivered February 11, 1887.